UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CHRISTIAN DIOR COUTURE SA and LOUIS VUITTON MALLETIER,<br><br>Plaintiffs,<br><br>-against-<br><br>XIAOLE LIN, TIMI GIFT SHOP, INC., SHUN MIAO DING, GUO L. HUANG, XIAOWEI GAO, XINGYUN HU, MING LI, XIUQIAN CHI, FEI Y. LU, YONGCHAN ZHANG, YU HOU QU, CAI QIN XIE, XIAOLIU WANG a/k/a LI LI WANG, and JOHN and JANE DOES 1–100,<br><br>Defendants. | Civil Case No. 22-cv-10716<br><br>[~~PROPOSED~~] **PRELIMINARY INJUNCTION ORDER; ORDER CONTINUING THE RETENTION OF THE ITEMS SEIZED; AND ORDER AUTHORIZING EXPEDITED DISCOVERY** |

**WHEREAS**, on December 21, 2022, Plaintiff Christian Dior Couture SA ("Christian Dior") commenced this action under seal and sought the entry of (1) an *ex parte* temporary restraining order pursuant to 15 U.S.C. § 1116 and Fed. R. Civ. P. 65(b), (2) an order authorizing an *ex parte* seizure pursuant to 15 U.S.C. § 1116(d); (3) an order granting leave for Christian Dior to take expedited discovery pursuant to Fed. R. Civ. P. 26(d); and (4) an order to show cause why a preliminary injunction should not issue pursuant to 15 U.S.C. § 1116, 15 U.S.C. § 1125(c)(1), N.Y. Gen. Bus. Law § 360-l, and Fed. R. Civ. P. 65(a) (the "Christian Dior Application");

**WHEREAS**, on January 4, 2023, the Court granted the Christian Dior Application and entered an *Ex Parte* Temporary Restraining Order, Order Authorizing *Ex Parte* Seizure and Expedited Discovery, and Order to Show Cause for a Preliminary Injunction;

**WHEREAS**, on January 12, 2023, Christian Dior, accompanied by its attorneys, investigators, and the New York City Police Department, executed the seizure authorized by the Court's January 4 Order and seized thousands of items;

**WHEREAS**, upon preparing an inventory of the items seized on January 12, investigators for Christian Dior discovered that, in addition to the products bearing Christian Dior's trademarks, many of the items included trademarks owned by Louis Vuitton Malletier ("Louis Vuitton");

**WHEREAS**, on January 25, 2023, counsel for Christian Dior filed an inventory report with the Court identifying products and items seized on January 12, 2023 (the "Inventory Report");

**WHEREAS**, Christian Dior and Louis Vuitton (collectively, "Plaintiffs") are both part of the LVMH Moët Hennessy Louis Vuitton luxury group;

**WHEREAS**, Louis Vuitton has an interest in protecting its famous trademarks and preventing counterfeiting and dilution of same by Defendants;

**WHEREAS**, on January 31, 2023, Christian Dior, on behalf of itself and Louis Vuitton, filed a memorandum of law with supporting declarations by Robert M. Wasnofski, Jr., Stephen G. Ward, and Eric Lacoma, and exhibits annexed thereto, in support of an *ex parte* motion, seeking, *inter alia*, (1) leave pursuant to Fed. R. Civ. P. 15(a)(2) and Fed. R. Civ. P. 21 to file a proposed Second Amended Complaint to name Louis Vuitton as an additional plaintiff and to correct the name of a Defendant, (2) a temporary restraining order against Defendants with respect to products bearing Louis Vuitton's trademarks, and (3) preliminary injunctive relief against Defendants in favor of proposed plaintiff Louis Vuitton (the "Louis Vuitton Application");

**WHEREAS**, on February 1, 2023, counsel for Christian Dior and Louis Vuitton appeared at a hearing before the Court and argued, *inter alia*, in favor of the Louis Vuitton Application;

**WHEREAS**, on February 2, 2023, the Court granted the Louis Vuitton Application and entered an *Ex Parte* Temporary Restraining Order and Order to Show Cause for a Preliminary Injunction;

**WHEREAS**, on February 2, 2023, in accordance with 15 U.S.C. § 1116(d)(7), the Court's inherent equitable power to issue provisional remedies ancillary to its authority to provide final equitable relief, and for purposes of preventing consumer confusion in the marketplace, the Court authorized Christian Dior's and Louis Vuitton's attorneys, private investigators, or agents, as substitute custodians for the Court, to retain all seized products and items identified in the Inventory Report during the pendency of this action, until further order of the Court;

**WHEREAS**, Louis Vuitton served Defendants Xiaole Lin, Timi Gift Shop, Inc., Shun Miao Ding, Guo L. Huang, Xiaowei Gao, Xingyun Hu, Ming Li, Fei Y. Lu, Yongchan Zhang, Yu Hou Qu, Cai Qin Xie, and Xiaoliu Wang a/k/a Li Li Wang pursuant to the Court's February 2, 2023 order and filed proof of service with the Court;

**WHEREAS**, Defendants did not file any papers opposing the Louis Vuitton Application or entry of a preliminary injunction in favor of Louis Vuitton;

**WHEREAS**, the Court, having considered Louis Vuitton's Motion for a Preliminary Injunction, makes the following findings of fact and conclusions of law:

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

1. Louis Vuitton is the owner of several valid and subsisting trademark registrations, including, but not limited to, the federally registered marks LOUIS VUITTON, LOUIS VUITTON PARIS, LV (Stylized), and various design marks (collectively, the "Marks"), which appear on the Principal Register in the United States Patent and Trademark Office ("USPTO"), including:

| Reg. No. | Trademark | Goods/Services |
|---|---|---|
| 1045932 | LOUIS VUITTON | Class 18: Luggage and ladies' handbags |
| 4530921 | LOUIS VUITTON | Class 16: *inter alia*, catalogs featuring luggage, travel accessories, bags, small leather goods, and clothing; Class 25: *inter alia*, clothing, leather belts, scarves |

3

| 1990760 | LOUIS VUITTON | Class 16: *inter alia*, catalogues featuring luggage and travel accessories, bags, small leather goods and garments<br><br>Class 18: *inter alia*, traveling bags, luggage, handbags, tote bags, wallets, credit card cases, key cases, change purses<br><br>Class 25: *inter alia*, belts, scarves |
|---------|---------------|----------|
| 2346373 | LOUIS VUITTON PARIS | Class 18: *inter alia*, travelling bags, handbags, shoulder bags, pouches, fine leather goods, pocket wallets, purses, key cases, card holders, checkbook holders<br><br>Class 25: *inter alia*, clothing and underwear, scarves, clothing belts |
| 1519828 | LV | Class 18: *inter alia*, traveling bags, satchels, hand bags, pocketbooks |
| 1794905 | LV | Class 16: *inter alia*, printed labels for luggage and other travel goods and leather holders therefor<br><br>Class 26: *inter alia*, clothing for men and women, belts, scarves |
| 2361695 | LV | Class 25: *inter alia*, clothing, belts |
| 1615681 | LOUIS VUITTON MALLETIER A PARIS | Class 18: *inter alia*, traveling bags, hand bags, wallets, passport cases, key cases, credit card cases, business card cases, change purses |
| 4192541 | [LV monogram pattern] | Class 18: *inter alia* traveling bags, trunks, suitcases, vanity cases, toiletry bags, backpacks, handbags, attaché cases, leather document cases, wallets, purses, leather key cases<br>Class 25: *inter alia*, clothing, belts |

| | | |
|---|---|---|
| 297594 | | Class 18: *inter alia* trunks, traveling bags, satchels, hand bags, pocketbooks |
| 1841850 | | Class 18: *inter alia*, bags, handbags, pouches, wallets, card cases, bill and card holders, key holders, change purses |
| 3576404 | | Class 18: *inter alia*, traveling bags, luggage, handbags, shoulder bags, purses, leather pouches, wallets, change purses, business card cases |
| 3107072 | | Class 18: *inter alia*, leather and imitation leather products, traveling bags, trunks and suitcases, handbags, pouches made of leather, wallets, purses, business card cases, credit card cases<br><br>Class 25: *inter alia*, clothing, belts, scarves |
| 2177828 | | *inter alia*,<br><br>Class 18: *inter alia*, hand bags, shoulder bags, fine leather goods, pocket wallets, purses, leather key holders, business card cases, and credit card cases<br><br>Class 25: *inter alia*, clothing, belts |

5

| 2181753 | | *inter alia*, <br><br> Class 18: *inter alia*, luggage for travel, hand bags, shoulder bags, fine leather goods, pocket wallets, purses, leather key holders, business card cases, credit card cases <br><br> Class 25: *inter alia*, clothing, belts, scarves |
|---|---|---|
| 2773107 | | *inter alia*, <br><br> Class 18: *inter alia*, travel bags, shoulder bags, handbags, pocket wallets, purses, business card cases made of leather or of imitation leather, credit card cases made of leather or of imitation leather <br><br> Class 25: *inter alia*, clothing, belts, scarves |

Declaration of Eric Lacoma, dated January 31, 2023 ("Lacoma Decl."), ¶¶ 7–8, Ex. 1.

2. Louis Vuitton has extensively and continuously advertised and promoted the Marks within the United States for many decades. *Id.* ¶ 9.

3. Substantial amounts of time, effort, and money have been expended over the years to ensure that the public associates the Marks exclusively with Louis Vuitton when used in connection with, inter alia, leather goods, handbags, clothing, and belts. *Id.* ¶ 10.

4. As a result, the Marks are well-known throughout the United States and worldwide as products of high quality exclusively originating from Louis Vuitton. *Id.* ¶ 13.

5. Based on the widespread and long-term use of the Marks, the Marks became famous long prior to the acts of Defendants complained of in this action and the Marks have developed a strong secondary meaning and significance in the minds of the purchasing public. *Id.* ¶¶ 14, 24.

6. Louis Vuitton also owns common law rights in the Louis Vuitton Marks and in its trade name, Louis Vuitton, under which it has long promoted, advertised, offered for sale, and sold its goods in the United States. *Id.* ¶ 15.

7. On January 12, 2023, with the assistance of the New York City Police Department, investigators executed the seizure order included in the Court's January 4 Order outside, around, and in the vicinity of 120 Lafayette Street, New York, NY 10013 and seized thousands of items from several of the Defendants. Declaration of Stephen G. Ward, dated January 31, 2023 ("Ward Decl."), ¶¶ 4–5.

8. Following the seizure, investigators prepared an inventory of the items seized and observed that many of the seized items included trademarks for Louis Vuitton, including 1,190 handbags, duffle bags, backpacks, and wallets bearing Louis Vuitton trademarks, 29 belts bearing Louis Vuitton trademarks, and five laminated inventory pamphlets and sheets bearing both Christian Dior's trademarks and Louis Vuitton trademarks. *Id.* ¶ 7.

9. Louis Vuitton has examined images of representative samples of the Louis Vuitton-branded products that were discovered during the January 12 seizure and determined them to be counterfeit. Lacoma Decl. ¶¶ 27–32, Ex. 3.

10. Louis Vuitton has not authorized Defendants' use of the Marks or their use, distribution, or sale of products bearing the same. *Id.* ¶ 33.

11. Because the seized products are not subject to Louis Vuitton's strict quality control standards and are manufactured, distributed, and sold without Louis Vuitton's authorization, the return of the seized counterfeit products and any further distribution and sale of such products will irreparably harm Louis Vuitton, its reputation, and its substantial goodwill in the Marks. *Id.* ¶ 35.

12. Monetary damages alone cannot adequately compensate Louis Vuitton for Defendants' infringements of Louis Vuitton's intellectual property rights because such damages fail to address the loss of control and damage to Louis Vuitton's reputation and goodwill. *Id.* ¶ 36.

13. A party seeking to obtain a preliminary injunction must show: (1) a likelihood of success on the merits; (2) a likelihood of irreparable harm in the absence of an injunction; (3) that the balance of hardships favors the plaintiff; and (4) that the public interest will not be disserved if an injunction issues. *3M Co v. Performance Supply, LLC*, 458 F. Supp. 3d 181, 191 (S.D.N.Y. 2020).

14. The Court finds that Louis Vuitton is likely to succeed on the merits of its claims. The Lanham Act provides that a defendant is liable for trademark infringement and counterfeiting if a defendant, "without the consent of the registrant, uses in commerce any reproduction, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods . . . which such use[s] is likely to cause confusion, or to cause mistake, or to deceive." 15 U.S.C. § 1114(1). Courts examine whether (1) "plaintiff's mark is entitled to protection," and (2) whether "defendant's use of the mark is likely to cause consumers confusion." *Virgin Enters. Ltd. v. Nawab*, 335 F.3d 141, 146 (2d Cir. 2003).

15. Louis Vuitton's claims for false designation of origin and unfair competition under the Lanham Act are subject to the same analysis and may be considered together. *See Louis Vuitton Malletier v. Dooney & Bourke, Inc.*, 454 F.3d 108, 114 (2d Cir. 2006).

16. Louis Vuitton meets both requirements. Louis Vuitton owns federal trademark registrations, for the Marks, which serve as *prima facie* evidence of validity. *See* Lacoma Decl. ¶¶ 7–8; 15 U.S.C. §§ 1057(b), 1115(a); *see also Matal v. Tam*, 137 S. Ct. 1744, 1753 (2017). Because Defendants are using identical or substantially indistinguishable copies of the Marks in

8

connection with their trafficking of counterfeit products, *see* Lacoma Decl. ¶¶ 27–32, Ward Decl. ¶ 7, likelihood of confusion is all but certain. *See Spin Master Ltd. v. Alan Yuan's Store*, 325 F. Supp. 3d 413, 421 (S.D.N.Y. 2018).

17. Demonstration of a likelihood of success on the merits of a Lanham Act claim demonstrates a likelihood of success on the merits of an unfair competition claim based on New York common law if the plaintiff shows the defendants acted in bad faith. *Salvatore Ferragamo S.p.A. v. Does 1-56*, No. 18-CV-12069 (JPO), 2020 WL 774237, at *4 (S.D.N.Y. Feb. 18, 2020). Because Louis Vuitton has demonstrated a likelihood of success on its trademark infringement and counterfeiting claims against Defendants, bad faith is presumed. *See id.*

18. Louis Vuitton has also demonstrated a likelihood of success on the merits on its dilution claims under both federal and New York trademark law. Federal trademark dilution claims require showing that "(1) the mark is famous; (2) defendant's use of the mark is made in commerce; (3) the defendant used the mark after the mark is famous; and (4) the defendant's use of the mark is likely to dilute the quality of the mark by blurring or tarnishment." *DigitALB, Sh.a v. Setplex, LLC*, 284 F. Supp. 3d 547, 557 (S.D.N.Y. 2018) (citation omitted). The legal standard for New York trademark dilution claims is "essentially the same." *Twentieth Century Fox Film Corp. v. Marvel Enters., Inc.*, 220 F. Supp. 2d 289, 297 (S.D.N.Y. 2002).

19. Louis Vuitton satisfies each prong of the dilution analysis. Louis Vuitton's long-term, widespread advertising and sales success of its products over many decades, and the broad recognition of the Marks among the public over that time, demonstrate that the Marks are famous and became so long prior to the acts complained of herein by Defendants. *See* Lacoma Decl. ¶¶ 9–14, 23–25. Further, Defendants have trafficked the counterfeit Louis Vuitton products in commerce and such acts took place after the Marks became famous. *See id.* ¶¶ 14, 24, 27–32;

9

Ward Decl. ¶ 7. And lastly, Defendants' use of the Marks is likely to cause dilution by blurring or dilution by tarnishment as courts in this District have held that the trafficking of counterfeit products causes dilution by blurring and tarnishment per se. *See, e.g., Burberry Ltd. v. Euro Moda, Inc.*, No. 08 CIV. 5781 (CM), 2009 WL 1675080, at *14–15 (S.D.N.Y. June 10, 2009). The use of counterfeit marks necessarily harms a mark's ability to serve as a unique source identifier causing dilution by blurring and moreover it harms the reputation of a mark given the inferior quality of counterfeit products sold under the plaintiff's mark thereby causing dilution by tarnishment. *See Hormel Foods Corp. v. Jim Henson Prods., Inc.*, 73 F.3d 497, 507 (2d Cir. 1996); *Burberry*, 2009 WL 1675080, at *15.

20. Because Louis Vuitton has demonstrated a likelihood of success on the merits of its claims, irreparable injury may be presumed. 15 U.S.C. § 1116(a).

21. On balance, the equities decidedly tip in favor of Louis Vuitton. Without an injunction, Louis Vuitton's goodwill among its customers and the public will suffer, consumers in the marketplace will be confused, and Defendants will continue to profit from their exploitation of Louis Vuitton's intellectual property. *See* Lacoma Decl. ¶¶ 33–37. Defendants' retention of unlawful profits is insufficient to tip the balance in Defendants' favor. Defendants proceeded at their own peril when they intentionally infringed Louis Vuitton's intellectual property rights and engaged in this illicit conduct. *See Barefoot Contessa Pantry, LLC v. Aqua Star (USA) Co.*, No. 15-CV-1092 JMF, 2015 WL 845711, at *8 (S.D.N.Y. Feb. 26, 2015).

22. Granting a preliminary injunction serves the public interest in this case because it will prevent the public from confusion, deception and mistake as a result of Defendants' aforementioned acts. *See NYP Holdings v. New York Post Pub. Inc.*, 63 F. Supp. 3d 328, 342

(S.D.N.Y. 2014) ("The consuming public has a protectable interest in being free from confusion, deception and mistake.").

23. Courts have "wide discretion" on whether to require the posting of a security upon issuance of a temporary restraining order or preliminary injunction, and the amount thereof. *See Doctor's Assocs., Inc. v. Stuart*, 85 F.3d 975, 985 (2d Cir. 1996); Fed. R. Civ. P. 65(c). In light of the strong evidence of counterfeiting, infringement, and unfair competition, the Court finds that a bond of $50,000, which has already been posted by Louis Vuitton, remains appropriate in this instance.

## PRELIMINARY INJUNCTION ORDER

**IT IS HEREBY ORDERED THAT**, based upon the foregoing and for the reasons recorded on the record during the proceedings herein, issuance of a Preliminary Injunction is warranted under 15 U.S.C. § 1116, 15 U.S.C. § 1125(c)(1), N.Y. Gen. Bus. Law § 360-l, and Fed. R. Civ. P. 65(a), and Defendants Xiaole Lin, Timi Gift Shop, Inc., Shun Miao Ding, Guo L. Huang, Xiaowei Gao, Xingyun Hu, Ming Li, Fei Y. Lu, Yongchan Zhang, Yu Hou Qu, Cai Qin Xie, Xiaoliu Wang a/k/a Li Li Wang, their agents, servants, employees, officers, and all other persons and entities in active concert or participation with them, including Defendant Xiuqian Chi, pending the final hearing and determination of this action, are hereby immediately **PRELIMINARILY ENJOINED** from:

1. Using any of the Marks or any other Louis Vuitton trademarks, names, or designations in connection with the trafficking, manufacture, importation, exportation, advertising, marketing, promotion, distributing, offering for sale, and/or sales of any products:

2. Committing any acts calculated to cause the public to believe that any Louis Vuitton-branded products are sold under the control or supervision of Louis Vuitton, when they are not;

3. Selling, passing off, inducing, or enabling others to sell or pass off any products as Louis Vuitton products or as products produced by or for Louis Vuitton, which are not genuine Louis Vuitton goods, or are not sold under the control or supervision of Louis Vuitton;

4. Trafficking, manufacturing, importing, exporting, distributing, advertising, marketing, promoting, offering for sale, and/or selling counterfeit products, or any labels, stickers, tags, signs, prints, wrappers, packaging, literature, and all other materials bearing the Marks or any other Louis Vuitton trademarks, and all plates, molds, or other means for making the same, directly or indirectly;

5. Infringing any Marks or any other Louis Vuitton trademarks or trade names, or copying any product design, packaging, label, or other material utilized by Louis Vuitton in connection with the distribution, offer for sale, and/or sale of any product or service without prior authorization from Louis Vuitton;

6. Using any counterfeit, copy, reproduction, or colorable imitation of any of the Marks or any other Louis Vuitton trademarks or trade name in connection with the promotion, advertising, or sale of any products;

7. Making or using in connection with the sale of any goods, a false description or representation including words or other symbols that falsely describe or represent, expressly or impliedly, such goods as Louis Vuitton goods and from offering such goods in commerce;

8. Diluting any of the Marks or any other Louis Vuitton trademarks;

9. Destroying and/or failing to preserve any counterfeit products or records related to the trafficking, manufacturing, importing, exporting, distributing, advertising, marketing, promoting, offering for sale, and/or sale of any products purporting to be Louis Vuitton products or other products using any of the Marks and/or any other Louis Vuitton trademarks; and

10. Aiding or abetting any other person or entity engaging in or performing any of the acts referred to in paragraphs 1 through 9 above.

**IT IS FURTHER ORDERED THAT**, during the pendency of this Order, Louis Vuitton shall be authorized to inspect any products trafficked, manufactured, imported, exported, distributed, advertised, marketed, promoted, offered, or sold by Defendants that bear the Marks for the purpose of determining whether they are genuine or counterfeit or infringing, and thus to confirm whether Defendants are complying with this Order.

**IT IS FURTHER ORDERED THAT**, during the pendency of this Order, Christian Dior's and Louis Vuitton's attorneys, private investigators, or agents, as substitute custodians for the Court, are authorized to retain all seized products and items identified in the Inventory Report.

**IT IS FURTHER ORDERED THAT**, within thirty days after service of this Order on Defendants by Louis Vuitton, Defendants shall file with the Court and serve on counsel for Louis Vuitton a report in writing under oath setting forth in detail the manner and form in which the Defendant has complied with this Order.

**IT IS FURTHER ORDERED THAT**, upon two (2) business days' written notice to the Court and Louis Vuitton's counsel, any Defendant or affected third party may, upon proper showing, appear and move for dissolution or modification of the provisions of this Order.

**IT IS FURTHER ORDERED THAT**, pending the final disposition of all claims in this action, Defendants shall preserve all documents, electronically-stored information, and/or tangible

things that may be relevant to the subject matter of, or reasonably calculated to lead to the discovery of admissible evidence in, this action or any of the claims asserted herein, and maintain them in an accessible form and place.

### BOND

**IT IS FURTHER ORDERED THAT** the bond or undertaking in the amount of $50,000 posted with the Clerk of Court by Louis Vuitton on February 3, 2023 remains sufficient to provide security for the payment of such costs and damages as may be incurred or suffered by any Defendant, if any, as a result of wrongful implementation of this Order, or any part thereof.

### EXPEDITED DISCOVERY

**IT IS FURTHER ORDERED THAT**, pursuant to Rules 26, 30, 33, and 34 of the Federal Rules of Civil Procedure, Plaintiffs may continue to conduct expedited discovery in this action as follows:

1. Plaintiffs may serve requests for the production of documents and interrogatories pursuant to Rules 26, 33, and 34 of Federal Rules of Civil Procedure, and Defendants who are served with this Order and the requests for the production of documents shall produce all documents responsive to such requests within fourteen (14) days of service to Plaintiffs' counsel. Service of such discovery requests and interrogatories on Defendants shall be deemed good and sufficient if made personally, by first-class mail, or upon counsel, should counsel appear for a Defendant in this action. If service of such discovery requests and interrogatories on Defendants is made by first-class mail, the Defendant shall have fourteen (14) days from the date of mailing to respond to the discovery requests; and

2. All Defendants shall additionally appear for their deposition or provide witnesses for deposition, as appropriate, pursuant to Rule 30 of the Federal Rules of Civil Procedure, not

later than seven (7) days after Plaintiffs serve them with notices of deposition for such witnesses' testimony. Service of such deposition notices on Defendants shall be deemed good and sufficient if made personally, by first-class mail, or upon counsel, should counsel appear for a Defendant in this action. If service of such notice(s) of deposition on Defendants is made by first-class mail, the Defendants shall have seven (7) days from the date of mailing to appear for deposition as called for by the deposition notice(s).

**IT IS FURTHER ORDERED THAT** the Court will hold a conference, pursuant to Fed. R. Civ. P. 16(a), on April 7, 2023 at 10:00 a.m. in Courtroom 14D of the United States District Court for the Southern District of New York, located at 500 Pearl Street, New York, NY, to discuss the status of discovery. The parties are directed to prepare and bring a proposed Civil Case Management Plan, using the form attached to Judge Hellerstein's Individual Rules.

**SO ORDERED**, this day of February 14, 2023.   11:15 a.m.

_____
Hon. Alvin K. Hellerstein, U.S.D.J.